No. 82-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

DAVID E. FOSTER,

                Plaintiff and Appellant,

    -vs-

HELEN KOVICH, Election Administrator,
County of Lewis & Clark, State of
Montana,

                Defendant and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Cannon & Sheehy; Edmund F. Sheehy, Jr. and Ross
                Cannon argued, Helena, Montana

        For Respondent:

                Hon. Mike Greely, Attorney General, Helena, Montana
                Judy Browning argued, Asst. Atty. General, Helena
                Mike McGrath, County Attorney, Helena, Montana

                            Submitted:  June 3, 1983

                              Decided:  December 12, 1983

Filed:  DEC 12 1983

            *Ethel M. Harrison*

            _____
                        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff, David E. Foster, the mayor of East Helena, appeals from summary judgment entered against him in Lewis and Clark County District Court. The trial court dissolved the temporary injunction prohibiting the recall election and ordered that the election take place. The trial court then suspended entry of the order pending the outcome of this appeal.

Plaintiff presents two issues. First, he argues that the allegations in the recall petition were legally insufficient to constitute grounds for recall under section 2-16-603(3), MCA, of the Montana Recall Act. We agree with plaintiff that under the Montana Recall Act, the legal sufficiency of allegations in a recall petition is a judicial as opposed to a political question, and is to be decided by the District Court. Second, he argues that the Montana Recall Act, section 2-16-601 et seq., MCA, is unconstitutional because it delegates legislative power to the election administrator to determine the sufficiency of the petition as to form. We reverse the trial court and hold that the allegations in the recall petition were insufficient as a matter of law to constitute grounds for recall and direct the trial court to enter an order enjoining the election administrator from authorizing the election. We do not reach the constitutional issue because we find the issue regarding the petition dispositive.

The recall petition was based on three of the five alternative grounds for recall of an elected public official specified in section 2-16-603(3), MCA, of the Montana Recall

2

Act. First, it was alleged that the mayor was guilty of official misconduct because he demoted the police chief without cause as required by a city ordinance. Second, the petition alleged that the mayor violated his oath of office by failing to follow the prescribed order of business for four city council meetings in January and February 1982. Third, the petition alleged that the mayor was incompetent to hold office because he failed to conduct an orderly council meeting on February 4, 1982, and used vulgar language while conducting that meeting.

The first recall petition was, on the advice of the county attorney, rejected because it was wrongly addressed and because the general statement of reasons for recall exceeded the 200-word limit imposed by section 2-16-616, MCA. Petitioner revised the general statement as required and properly addressed the second petition to the Clerk and Recorder for Lewis and Clark County. The second petition was, on the advice of the county attorney, accepted as sufficient to allow a recall election if the requisite number of signatures were obtained.

Invoking a remedy provided for in the Recall Act, the mayor then petitioned the trial court asking that the recall petition be held invalid. The mayor contended that the reasons for recall cited by the petition were not adequately specific and insufficient to meet any definition of the grounds for recall specified in section 2-16-603(3), MCA. The mayor also contended that the Montana Recall Act unconstitutionally delegates legislative power to the county election administrator to determine the sufficiency of the recall petition as to form.

The trial court rejected out of hand the contention that the Montana Recall Act was an unconstitutional delegation of power to the election administrator. In rejecting the claim that the charges in the petition were not sufficiently specific and definite to allow the mayor to respond and defend himself before the people, the trial court relied on authority from the states of Washington and Michigan. This authority, however, is inapplicable to the recall provision in this state because the constitutional and statutory grounds for recall in Michigan and Washington are substantially dissimilar to the grounds for recall specified in section 2-16-603(3) of the Montana Recall Act.

Michigan constitutional and statutory law require only that the recall petition ". . . state clearly . . ." the reasons for recall. However, determination of the sufficiency of the grounds stated for recall is left to the Michigan electorate. It is not a judicial determination as in Montana. Further, Michigan law does not limit the grounds for recall to specific constitutional or statutory provisions but Montana does. See, section 2-16-603(3) of the Recall Act. Therefore, the trial court's reliance on the Michigan cases of Molitor v. Miller (Mich. 1980), 301 N.W.2d 532, and Amberg v. Walsh (Mich. 1949), 38 N.W.2d 304 was misplaced.

The trial court also improperly relied on the Washington case of Bocek v. Bayley (1973), 81 Wash.2d 831, 505 P.2d 814. In Washington, an elective public officer may be recalled for any acts of malfeasance or misfeasance in office, or for a violation of the oath of office. Art. 1, § 33, (Amendment 8) Wash. Const.; RCW § 29.82.010. However, malfeasance or misfeasance is not a ground for recall in Montana.

4

In 1979, the Montana Recall Act was amended by removing malfeasance and misfeasance, and inserting official misconduct as a ground for recall. We presume that the legislature, in adopting an amendment to a statute, intended to make some change in existing law. Montana Milk Control Board v. Community Creamery Co. (1961), 139 Mont. 523, 366 P.2d 151. That presumption is especially applicable where, as here, the amendment materially changes the statutory provisions. We believe the legislature intended to change the law regarding grounds for recall by substituting official misconduct for malfeasance or misfeasance.

It follows that malfeasance and misfeasance cannot be equated to official misconduct under the Montana Recall Act. The only similarity between the Washington and Montana recall provisions is that a public officer may be recalled for violating an oath of office. But a careful reading of Bocek indicates that even reliance by the trial court on the violation of oath of office similarity was misplaced. Although in Bocek, the recall petition alleged violations of oath of office, the Washington Supreme Court did not hold that any of the acts alleged were such a violation. Rather, the Washington court analyzed the allegations only in light of misfeasance and malfeasance, grounds that are not a statutory basis for recall in Montana.

We proceed to a discussion of each charge alleged in the recall petition. The first charge, one that the mayor "misconducted himself in office by removing" a police officer from his position, requires a discussion of the statutory ground for recall, "official misconduct."

Although not specified in the recall petition, it appears that the petitioners, in alleging the removal of the

5

police officer as a ground of recall, intended to charge the mayor with "official misconduct" as specified in section 2-16-603(3) of the Recall Act. We determine, however, that the allegations here cannot fall within the meaning of "official misconduct" as intended by the legislature, for the legislature intended "official misconduct" to be defined only as it is defined in the criminal code under section 45-7-401, MCA.

Official misconduct is set forth in section 2-16-603(3) as a ground of recall. This statute provides in pertinent part:

> "Officers subject to recall -- grounds for recall. (1) Every person holding a public office of the state or any of its political subdivisions, either by election or appointment, is subject to recall from such office.
>
> ". . .
>
> "(3) Physical or mental lack of fitness, incompetence, violation of his oath of office, official misconduct, or conviction of a felony offense enumerated in Title 45 is the only basis for recall. No person may be recalled for performing a mandatory duty of the office he holds or for not performing any act that, if performed, would subject him to prosecution for official misconduct."

The second sentence of subsection 2-16-603(3), MCA, expressly states that "[n]o person may be recalled . . . for not performing any act that, if performed, would subject him to prosecution for official misconduct." (Emphasis added.) We are convinced by this statutory language and by the legislative history of section 2-16-603, MCA, that official misconduct is to be applied for purposes of recall as it is defined in the criminal code under section 45-7-401, MCA. That statute provides in relevant part:

6

"Official misconduct. (1) A public servant commits the offense of official misconduct when in his official capacity he commits any of the following acts:

"(a) purposely or negligently fails to perform any mandatory duty as required by law or by a court of competent jurisdiction;

"(b) knowingly performs an act in his official capacity which he knows is forbidden by law;

"(c) with the purpose to obtain advantage for himself or another, performs an act in excess of his lawful authority;

"(d) solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law; or

"(e) knowingly conducts a meeting of a public agency in violation of 2-3-203."

A public servant is not guilty of official misconduct and subject to recall unless he has committed one or more of the acts specified in section 45-7-401, MCA. As we discuss below, removal or demotion of a police officer without cause does not constitute grounds upon which to seek recall of the mayor.

The petition alleges that the "removal" and "demotion" of the police officer violated a city ordinance relating to the powers of the mayor. That ordinance, section 1-6-2, provides in pertinent part:

"Powers. The Mayor shall have the power:

". . .

"B. To suspend and, with the consent of the council, to remove any nonelective officer, stating in the suspension or removal the cause therefor."

Although not necessary to our decision, we note first the failure of the charge to specify what the mayor had done. The charge alleges that the mayor removed the police officer

7

without cause but it does not specify the allegation, that is, whether the mayor failed to give a reason for the removal or whether a reason was given but that it was insufficient on which to base a removal. One facing a recall petition and possible election is entitled to more precision than given here.

But more important insofar as a violation of the law is alleged, we determine that the city ordinance does not apply to an act of the mayor in demoting a police officer, which is the case here. The city ordinance requires cause to be stated only when a nonelective officer is suspended or removed, but here the police officer was demoted. We therefore conclude that the mayor did not violate the ordinance by demoting the police chief and his act could not trigger a recall election based on an allegation of "official misconduct."

The second charge in the petition is that the mayor violated his oath of office by failing to follow the prescribed order of business specified in City Ordinance 1-5-3. The oath of office, required of all members of the legislature and all executive, ministerial and judicial officers, reads:

> "'I do solemnly swear (or affirm) that I will support, protect, and defend the constitution of the United States, and the constitution of the state of Montana, and that I will discharge the duties of my office with fidelity (so help me God).' No other oath, declaration, or test shall be required as a qualification for any office or public trust." Art. III, § 7, Mont. Const.; section 2-16-211, MCA.

A failure to follow a prescribed order of business is hardly a failure to "support, protect, and defend" the United States and Montana Constitutions. Therefore, the act on the

8

part of the mayor must, to sufficiently constitute a ground for recall under section 2-16-603(3) of the Recall Act, be a failure to "discharge the duties of [his] office with fidelity." The trial court relied on the Michigan case of Molitor v. Miller, supra, to hold that a violation of a city ordinance is a violation of the oath of office. However, as stated previously, this case has no application to the Montana Recall Act, as the Michigan Constitution precludes the judiciary from determining the legal sufficiency of allegations in a recall petition. In Michigan, that determination is left to the electorate.

The petition bases the oath of office violation on City Ordinance 1-5-3, which provides:

> "Order of Business: At the hour appointed for the meeting, the Council shall be called to order by the Mayor . . . Upon the appearance of a quorum, the Council shall proceed to business in the following order:
>
> "A. Reading, amending and approving the minutes of the previous meeting.
>
> "B. Reports of officers.
>
> "C. Reports of standing committees.
>
> "D. Reports of special committees.
>
> "E. Presentation of petitions and communications.
>
> "F. New business.
>
> "G. Unfinished business.
>
> "H. Bills.
>
> "All questions relating to the priority of business shall be decided without debate."
> (Emphasis added.)

Assuming arguendo that a violation of this ordinance would constitute a ground for recall, the petition fails to specifically set forth what order of business was followed by

the mayor and how that was in violation of the ordinance. The allegation is conclusory and indefinite. We recently held that the allegations in a recall petition must be definite and specific so that the public officer charged is adequately apprised of the exact alleged wrongdoing so that he may answer the charges before the people. Steadman v. Halland (Mont. 1982), 641 P.2d 448, 39 St.Rep. 343.

Further, by our reading of City Ordinance 1-5-3, the city council is equally responsible for conducting the business of the meetings in the prescribed order. The petition does not specify whether the city council objected at the time the mayor allegedly violated the ordinance. Nor does the petition otherwise set forth reasons why the mayor alone was responsible for the alleged deviation from the prescribed order of business. The second charge fails to meet the test of specificity and definiteness under Steadman, supra, and is legally insufficient to constitute a ground for recall under section 2-16-603(3) of the Recall Act.

The third and final charge in the petition alleged the mayor to be "incompetent to hold office" because he allegedly failed to conduct an orderly council meeting on February 4, 1982, and because he used "vulgar language" while conducting that meeting. The charge neither specified how the meeting was disorderly nor set forth the words used that were allegedly "vulgar." While we hold that these allegations are conclusory and general and therefore subject to the same attack under the rule of Steadman, supra, we hold also that the failure to hold an orderly council meeting and use of vulgar language, do not constitute grounds for recall under section 2-16-603(3) of the Recall Act.

10

An assumption that the mayor used "vulgar language" at the city council meeting could lead to a conclusion that he used poor taste, but use of such language does not establish that the mayor is "unfit" or "unsuited" for the office. And further assuming that the mayor did not conduct an orderly council meeting on February 2, 1982, that fact does not justify a conclusion sufficient to invoke a recall election based on a charge that he was "incompetent to hold office." Assuming the meeting to have been disorderly, the petition is devoid of information that would tell why the meeting was disorderly, how or why the mayor was responsible for the lack of order, and how or why the failure to maintain order justified a recall election on the ground of incompetence. The legislature has made clear its intent to limit the grounds for recall to specific instances of conduct. The Attorney General observed in 38 Op. Att'y Gen. 139 (1979):

> "The [Recall] act was amended by the legislature in 1977 and 1979. The 1977 amendment repealed a provision of the original act which allowed recall for 'any reason causing the electorate dissatisfaction with a public official . . . notwithstanding good faith attempts to perform the duties of his office.' [See former section 59-612(3), R.C.M. 1974.]

> "The house and senate committee reports concerning the 1977 amendment reveal that portions of the Montana Recall Act as passed by the 1976 initiative were ambiguous and so broad as to conflict with existing law. Of major concern was the possibility an organized minority might cause a costly recall election merely to harass an official who was acting in a manner which was contrary to their wishes."

Some state constitutions or statutes provide very broad recall provisions and vest in the electorate the power to determine whether the acts alleged in the petition are

11

grounds for recall. In Montana, however, the legislature has limited the grounds for recall and has given the District Court the power to determine the legal sufficiency of the allegations in the recall petition. The legal sufficiency of the allegations is not left to the electorate. Therefore, a petition may never reach the electorate because it fails to specify acts legally sufficient to constitute grounds for recall under section 2-16-603(3) of the Recall Act.

We reverse the trial court, hold that the allegations in the petition are legally insufficient to constitute grounds for recall, and direct the trial court to enter an order enjoining the election administrator from authorizing a recall election.

Reversed and remanded with directions.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
_____
Justices

12

_____

Hon. Joel G. Roth,
District Judge, sitting
for Mr. Justice John C.
Sheehy

13